WALTER C. NEWMAN, JR. *vs.* GEORGE A. FULLER COMPANY *et al.*

JULY 22, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

114

CONDON, J. This is an action of assumpsit by an employee against his employers, to which action defendants filed a demurrer on the ground that the superior court, under the established law of this state, had no jurisdiction to entertain such action. In the opinion of the justice of that court who heard the demurrer the question raised thereby was of such doubt and importance and so affected the merits of the controversy that, with the approval of the presiding justice of the superior court, he ordered it certified to this court for our determination in accordance with the provisions of general laws 1938, chapter 545, §6, and rule 20 of the rules of practice of the supreme court.

That question is stated in the order of certification as follows: "Has the Superior Court jurisdiction of an action at law wherein the plaintiff sues by virtue of the provisions of the Fair Labor Standards Act of 1938, so-called, being Public Act Number 718, Chapter 676, Seventy-fifth Congress, Third Session, 52 Statutes at Large 1060-1069 (1938), U. S. C. A. Title 29, sections 201-209 (Supp. 1939), sections 7 and 15 (a) 2, as amended, to recover wages for labor in interstate commerce, said action being brought on a claim for the difference between the regular hourly rate of wages and one and one-half said rate for hours worked beyond the statutory work week, plus an additional like sum as liquidated dam-

ages and a reasonable counsel fee, and wherein the ad damnum is Three Thousand Dollars?"

At the hearing in this court L. Metcalfe Walling, administrator of the wage and hour division, United States department of labor, was allowed to appeal and file a brief as *amicus curiae,* and, with the consent of the plaintiff, the regional attorney of the division shared the time for oral argument allotted to the plaintiff. For convenience we shall hereinafter refer to his brief and argument as the plaintiff's, and for the same reason we shall refer to the Federal act under which suit was brought as the Fair Labor Standards Act.

Defendants contend that that act is a penal statute in an international sense and is, therefore, not enforceable in the courts of this state. In support of that contention they rely upon the recent case of *Robinson* v. *Norato,* 71 R. I. 256. The plaintiff contends, on the other hand, that that case is not in point for the reason that the Federal Emergency Price Control Act, therein held to be penal and unenforceable, is clearly distinguishable from the Fair Labor Standards Act. In short he argues that the latter is clearly not penal but remedial; that the United States supreme court has so held; and that therefore we too should hold it not to be penal in an international sense.

In the *Robinson* case we said that the test of whether a statute is penal in an international sense is not what the legislature or the court of its home state says it is but what the court of the state where it is sought to be enforced says it is. Acting in accordance with that doctrine we held the Emergency Price Control Act to be penal. So long as our authority to apply that principle to Federal laws, as we do to the laws of our sister states, is not repudiated by the supreme court of the United States, what that court or any inferior Federal court may say of a Federal statute being remedial rather than penal is not controlling upon us when we are called upon to determine whether such a statute is penal in an international sense. For that reason *Overnight*

*Motor Transportation Co., Inc.* v. *Missel,* 316 U. S. 572, and *Brooklyn Savings Bank* v. *O'Neil,* 324 U. S. 697, cited by the plaintiff, wherein the Fair Labor Standards Act was held to provide liquidated damages as compensation to restore the worker to the minimum standard of well-being, defined in the act, and not a penalty or punishment by the government, are not binding upon us. However, that is not to say that they may not be helpful in determining whether or not the predominant feature of that act is to afford compensation and not in any real sense to provide a substituted form of punishment of the employer by way of a private civil action. We shall, therefore, have occasion to refer hereinafter to certain language of the court's opinions in those cases.

By sec. 16 (a) the act provides certain criminal penalties for its violation, but by a separate sec. 16 (b), it is provided: "Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

It is significant that under this provision the right of action is exclusively in the employee injured by the violation. In this respect it differs from the Emergency Price Control Act. It also differs from that act in that it does not provide for the recovery of an arbitrary sum having no reasonably necessary relation to the injury suffered by the employee. The fact that the act provides for criminal prosecution in

one section and for recovery of damages by a civil action in another does not prevent it from being considered remedial when it is sought to enforce the civil remedy therein provided. *Gardner* v. *N. Y. & N. E. R. R. Co.,* 17 R. I. 790.

That the act terms the additional amount that may be recovered liquidated damages does not, however, necessarily require us to hold that it is remedial and not penal. But the use of such term taken together with the policy which the statute was expressly enacted to subserve, the reasonable relation of such damages to the actual damages sustained by the worker, and the construction which the supreme court of the United States has definitely given that portion of the act in *Overnight Motor Transportation Co., Inc.* v. *Missel, supra,* and *Brooklyn Savings Bank* v. *O'Neil, supra,* is strongly persuasive evidence that the liquidated damages provided in sec. 16 (b) were not intended to serve the purposes of a penalty. On the contrary those facts strongly point to an intent to assure to the injured worker substantial compensation not only for the deprivation of his rightful wages by the employer but also for the consequent expense, inconvenience and delay incidental to his being compelled to resort to litigation to obtain those wages.

In the *Overnight Motor Transportation Co., Inc.* case, at page 583, the supreme court said: "The liquidated damages for failure to pay the minimum wages . . . are compensation, not a penalty or punishment by the Government." If it had said no more the opinion of the court would be entitled to little weight in aiding us to determine whether or not the statute was penal in an international sense, but it went on and gave a reason for distinguishing sec. 16 (b) as essentially compensatory. "The retention of a workman's pay", it said, "may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." Here it is plain that the court conceived that Congress was seeking to provide a remedy that would be adequate for making the injured worker whole rather than a penalty that would simply mete out punishment to the employer.

That view was later amplified in the *Brooklyn Savings Bank* case, *supra,* when the court, in construing sec. 16 (b), said that the provision therein for liquidated damages "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living . . . that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being. Employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their well-being and efficiency until such sums are paid at a future date." Running all through such reasoning is a preoccupation of the mind with the economic condition of the worker who is deprived of his rightful wage, and with the utilization of some means, some remedy, that will adequately compensate him for such deprivation. Since that construction of the statute, until altered by Congress, is the law, there is no question that the intent of Congress in enacting sec. 16 (b) was solely to provide compensation to the worker.

In the light of that construction and of the fact that the damages allowed are not arbitrary in amount but bear a reasonable relation to the injury suffered by the worker, and in the light of the further fact that neither the state nor any private person in its behalf may sue for such damages, we are of the opinion that this statute differs quite markedly from the Emergency Price Control Act. That act clearly discloses an unmistakable purpose to punish violators thereof not only by criminal process at the will of the government but also by civil action either by the person aggrieved or by the government. If there was punishment intended by sec. 16 (b) of the act now under consideration and such punishment was totally unrelated to the injury suffered by the person aggrieved, as was obvious in the provisions of the Emergency Price Control Act, then the *Robinson* case would be clearly in point and would necessarily govern the case at bar, but there is no such punishment prescribed by that

section. Its sole purpose, on the contrary, is reparation to one aggrieved and not at all vindication of the public justice.

This court has held "that where a statute only gives a remedy for an injury against the person committing it to the person injured; and the recovery is limited to the amount of loss sustained, or to cumulative damages, as compensation for the injury, it falls within the class of remedial statutes", and is not penal, as the cumulative damages are given as compensation. *Gardner* v. *N. Y. & N. E. R. R. Co., supra.*

And in the case of *Aylsworth* v. *Curtis,* 19 R. I. 517, 521, this court held that a statute which allowed the owner to recover double the value of money or articles stolen from him was to be deemed a remedial statute, and not penal, for the following reason: "Where an action is founded entirely upon a statute, and the only object of it is to recover a penalty or forfeiture, it is clearly a penal action. . . . But where the damages are given wholly to the party injured, as compensation for the wrong and injury, the statute having for its object more the indemnification of the plaintiff than the punishment of the defendant, the action is not penal, properly so called, but remedial."

The statute which we are here considering is, so far as the provisions of sec. 16 (b) are concerned, clearly and solely one of indemnity to the plaintiff; and the prescribed indemnity is not arbitrary but is reasonably related to an award of compensation for the injury suffered.

For the above reasons, we are of the opinion that the instant action brought under the provisions of sec. 16 (b) is not an action to enforce a penalty prescribed by a foreign statute but is an action to recover compensation by way of indemnity for a private injury. As such it may be enforced in the superior court and hence we answer the question certified to us in the affirmative.

The papers in this case, with our answer to the certified question indorsed thereon, are ordered sent back to the superior court.

*Harlow & Boudreau,* for plaintiff.

*Eugene J. Phillips, Marshall Swan, Swan, Keeney & Smith,* for defendant.

*William S. Tyson,* Solicitor, *George H. Foley,* Regional Attorney, Massachusetts, *Frederick U. Reel, Harry A. Tuell,* for L. Metcalfe Walling, Administrator of the Wage & Hour Division, U. S. Department of Labor, as *amicus curiae.*